## UNITED STATES DISTRICT COURT
## IN THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

### Case No. 5:14-cv-00047-WTH-PRL

PAMELA TRAVAGLIO, an individual, on
behalf of herself and all others similarly
situated,

        Plaintiff,

v.

GE CAPITAL RETAIL BANK, a national
banking association, and ALLIED
INTERSTATE, LLC, a Minnesota limited
liability company,

        Defendants.

_____/

**DISPOSITIVE MOTION**

**ORAL ARGUMENT
REQUESTED**

### DEFENDANT GE CAPITAL RETAIL BANK'S
### MOTION TO COMPEL ARBITRATION
### AND SUPPORTING MEMORANDUM

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and Sections 3 and 4 of the

Federal Arbitration Act, Defendant GE Capital Retail Bank ("GECRB") respectfully requests

that this Court (a) compel Plaintiff Pamela Travaglio ("Plaintiff") to submit her claims to

arbitration to be heard on an individual basis and (b) dismiss the Amended Complaint in this

matter or stay the matter while dismissing the class allegations in light of Plaintiff's

contractual agreement not to participate in a class action.  In support, GECRB states as

follows:

1.      There is a valid, written agreement to arbitrate.  Plaintiff is an accountholder

of a GECRB CareCredit credit card.  When Plaintiff applied for and was approved for a

GECRB account on May 12, 2012, she agreed to GECRB's credit card agreement. The credit card agreement is valid and enforceable.

2.      An arbitrable issue exists. The credit card agreement contains an arbitration provision and class action waiver provision. The claims alleged in Plaintiff's Amended Complaint fall within the arbitration and class action waiver provisions of the agreement. As such, Plaintiff is contractually required to arbitrate her claims on an individual basis.

3.      The right to arbitrate has not been waived. In its original Motion to Dismiss the Complaint, GECRB specifically reserved the right to compel arbitration if Plaintiff put her delinquent account with GECRB at issue, and in her Amended Complaint, Plaintiff does just that. In addition, GECRB has not substantially participated in this case in a manner inconsistent with its right to arbitrate, and Plaintiff is in no way prejudiced by GECRB's Motion to Compel Arbitration.

4.      GECRB is also filing a Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike Class Allegations, but that motion is filed in the alternative to this Motion to Compel Arbitration, which should be heard first. The other motion is only relevant to the extent this motion is not granted in full.

5.      In further support of this Motion, GECRB submits the Memorandum of Law below.

## **MEMORANDUM OF LAW**

### **INTRODUCTION**

This case in its entirety should be sent to arbitration on an individual basis as the claim relates to the Plaintiff's GECRB CareCredit account as to which the operative GE

Capital Retail Credit Card Account Agreement has a valid and enforceable arbitration clause and class action waiver. The phone number at issue in this Telephone Consumer Protection Act ("TCPA") case is the phone number of record on Plaintiff's CareCredit account, and Plaintiff gave GECRB that number through GECRB's website after Plaintiff agreed that GECRB could call any number she provided using an automatic telephone dialing systems and/or an artificial or prerecorded voice. In her Amended Complaint, Plaintiff alleges that GECRB left three messages on her voicemail in March 2013 in violation of the TCPA. GECRB left those messages in an attempt to collect money Plaintiff owes on her CareCredit account, which it was entitled to do under the terms of the GE Capital Retail Credit Card Account Agreement. The claims in this case assert otherwise and create a dispute that plainly relates to Plaintiff's CareCredit account and, thus, must be arbitrated.

The background for this litigation is the explosion of TCPA lawsuits in the United States over the last few years.[1] The vast majority of those cases have been brought as individual actions and few putative classes have survived the class certification process. Despite limited success, a few putative class action plaintiffs continue to assert "wrong-party" classes, essentially classes of non-accountholders who were called by mistake because they acquired a phone number that previously belonged to an accountholder. In this case, Plaintiff is attempting to wedge herself into that category as if she is a stranger to GECRB

---

[1] In recent years, TCPA claims have increasingly flooded the courts. Plaintiffs filed 14 TCPA lawsuits in 2008, 31 in 2009, 345 in 2010, 825 in 2011, 1,101 in 2012, 1,862 in 2013 and if January 2014 is indicative, the number will exceed 2,400 in 2014. *See* Jack Gordon, *Debt Collection Litigation & CFPB Complaint Statistics, December 2013 & Year in Review*, InteractiveCredit.com (Jan. 22, 2014)), *available at* http://interactivecredit.com/?p=2101; Jack Gordon, *Debt Collection Litigation & CFPB Complaint Statistics, January 2014*, InteractiveCredit.com (Feb. 24, 2014), *available at* http://interactivecredit.com/?p=2110

and similarly-situated to someone who was called regarding the account of a complete stranger.  However, Plaintiff is a GECRB accountholder who has provided the very same telephone number of which she complains to GECRB *in connection with her own account* and who consented to be called at that phone number.  As such, Plaintiff's claims fall squarely within the arbitration provision and class action waiver provision of her Agreement with GECRB.  Plaintiff must arbitrate her claims on an individual basis.

## PROCEDURAL BACKGROUND

On January 17, 2014, Plaintiff filed her original barebones Complaint against GECRB alleging that GECRB violated the TCPA.  Plaintiff did not disclose that she had an account with GECRB.  (Compl. ¶ 16, Dkt. 1.)   Plaintiff did not identify any specific calls or messages in the Complaint.  (*See generally* Compl.)

In response, GECRB filed a Motion to Dismiss the Complaint, arguing that the Complaint was simply a recitation of the statute that contained no allegations of fact and that must be dismissed for failure to state a claim.  (*See generally* Mot. to Dismiss, Dkt. 21.) GECRB noted that it was not compelling arbitration at that time and instead would file a motion to dismiss because the Complaint did not put Plaintiff's account at issue, but GECRB reserved the right to compel arbitration at the first opportunity to do so once Plaintiff put her account at issue.  (*Id*. at 3, fn. 2.)  Plaintiff decided to file an Amended Complaint rather than oppose the Motion to Dismiss and did so on April 4, 2014.  GECRB informed Plaintiff's counsel of its view that the Amended Complaint put Plaintiff's account squarely at issue, and the parties agreed to a stay of discovery pending resolution of a motion to compel arbitration. The Court entered the stay of discovery on April 16, 2014.  (*See* Order, Dkt. 36.)

4

## THE AMENDED COMPLAINT

In the Amended Complaint, Plaintiff adds additional facts about the types of calls she received, the content of the messages she received, and the dates she that she received those calls and messages.  (*See generally* Am. Compl., Dkt. 31)  Specifically, Plaintiff alleges that she received "at least three pre recorded messages" on her voicemail in March 2013 from GECRB and describes the sound and content of those messages.  (*Id*. ¶¶ 24-28.)  Those messages are quoted as stating, in part:

> Friday 8 am to 10pm Eastern Standard Time, Saturday 8am to 5pm and Sunday 10am to 6:30 pm or visit our website at www.GoGECapital.com. Our mailing address is 170 West Election Road Suite 125 Draper Utah 84020. Thank you.

(*Id*. ¶ 27.)

Plaintiff again fails to mention that she has a GECRB account that is past due and which has been the subject of collection efforts, but nonetheless alleges without qualification that she "never provided her cell phone number to GECRB or granted consent to GECRB to call her number."  (*Id*. ¶ 32.)   There is no explanation as to why Plaintiff believes the messages were not made with respect to her account.  As shown below, those messages were left with respect to Plaintiff's CareCredit account.

## FACTUAL BACKGROUND

GECRB is a federal savings association that, among other things, issues credit cards to consumers as part of a number of private-label programs.  (Declaration of Martha Koehler, ¶¶ 2, 7, attached as Ex. A.)   One of its programs is known as "CareCredit," which is a program that provides revolving credit in connection with veterinary and certain healthcare-related services.  (*Id*. at ¶ 7.)  On May 12, 2012, Plaintiff went to the CareCredit website and

opened an account, thereby expressly agreeing to the GE Capital Retail Credit Card Account Agreement ("Agreement").  (*Id*. at ¶ 8.)  As supported by the Declaration of Martha Koehler and the documents attached thereto, Plaintiff:

- placed charges on her account (*id*. at ¶ 10);

- received billing statements and made payments for a time (*id*. at ¶ 22);

- stopped making payments and wrote GECRB about that fact (*id*. at ¶¶ 23-24);

- received attempts to collect her debt on the CareCredit account by both mail and phone to the number at issue in the Amended Complaint (*id*. at ¶¶ 24-26); and

- received voicemail messages in March 2013 relating to her CareCredit account (*id*. at ¶ 26).

As noted in the description of the Amended Complaint immediately above, the Amended Complaint references voicemail messages from GECRB  in March 2013.  (Am. Compl. ¶ 24.)  Plaintiff's husband's GECRB account was placed with Allied Interstate in February 2013 and no calls were made by GECRB in connection with his account in March 2013.  (Ex. A at ¶ 36.)  Thus, it is beyond dispute that there are messages relating to Plaintiff's CareCredit account that are put at issue in the Amended Complaint.

Significantly, Ms. Koehler's declaration evidences another critical fact which places Plaintiff's CareCredit account at issue in this dispute.  In connection with her move from Illinois to Florida, on July 7, 2012 at 3:34 p.m. ET, Plaintiff or someone acting on her behalf, using her online username and password, entered (352) 391-4483, the number she now alleges is her cell phone number, into GECRB's online CareCredit account records and

represented it to be her home phone number.  (*Id*. at ¶¶ 20-21.)  Indeed, under the

Agreement, Plaintiff had a duty to immediately advise GECRB of the phone and address

change in connection with her move from Illinois to Florida.  Specifically, the Agreement

states:

> **Address/Phone Change**. You agree to tell us right away if you change
> your address or phone number(s). We will contact you at the address or
> phone number in our records until we update our records with your new
> address or phone number.

(Agreement, Section III, Information About You, attached as Ex. B.)  The phone number as

to which Plaintiff claims she was called by GECRB with automatic telephone dialing

systems and/or an artificial or prerecorded voice without her consent is the very same number

she provided to GECRB when fulfilling her contractual obligations to update her account

records after moving from Illinois to Florida.  (*See* Am. Compl. ¶¶ 24, 30, 32; Motion for

Class Certification, Declaration of Tom Travaglio ¶ 4 (stating Plaintiff's cell phone number

is (352) 391-4483), Dkt. 18; Ex. A at ¶¶ 17, 21.)

    The Agreement clearly states that Plaintiff has provided consent to be called at any

number she provides to GECRB for all purposes including by using automatic telephone

dialing systems and/or an artificial or prerecorded voice:

> **Consent to Communications**. *You consent to us contacting you using all channels of
> Communication and for all purposes*. We will use the contact information you
> provide to us. You also consent to us and any other owner or servicer of your account
> contacting you using any communication channel. *This may include text messages,
> automatic telephone dialing systems and/or an artificial or prerecorded voice*. This
> consent applies even if you are charged for the call under your phone plan. You are
> responsible for any charges that may be billed to you by your communications
> carriers when we contact you.

(Ex. B at Section III, Information About You (emphasis added).)  GECRB takes the position

that the calls and messages identified in the Amended Complaint were made with Plaintiff's

express prior consent because she provided the number in connection with her account and

any dispute over that position plainly relates to her CareCredit account.

     This fact is important because there is an arbitration provision in the Agreement that

states "*you and we must arbitrate any dispute or claim* between you or any other user of your

account, and us, our affiliates, agents and/or participating professionals that accept the card

or program sponsors *if it relates to your account.*" (*Id*. at Section III, Resolving A Dispute

With Arbitration (emphasis added).)   More specifically the Agreement states:

- **What claims are subject to arbitration**
1. If either you or we make a demand for arbitration, *you and we must arbitrate any dispute or claim* between you or any other user of your account, and us, our affiliates, agents and/or participating professionals that accept the card or program sponsors *if it relates to your account*, except as noted below.

2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

3. Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

(*Id*. (emphasis added).)

     The Agreement also contains a class action waiver provision in which Plaintiff agreed

"not to participate in a class, representative or private attorney general action against

[GECRB] in court or arbitration":

**No Class Actions**
***YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION.* ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT A ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.**

(*Id.* (emphasis added).)  The Agreement granted Plaintiff the right to reject the Resolving A Dispute With Arbitration Section of the Agreement ("Dispute Section"), which contains both the arbitration clause and the class action waiver clause, but Plaintiff did not exercise that right.[2] (Ex. A at ¶¶ 12, 14.)

## THE DISPUTE SECTION

For ease of reference, the entire Dispute Section of the Agreement is set forth below:

**RESOLVING A DISPUTE WITH ARBITRATION**

**PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED**.

---

[2]  The Agreement provides:

> **How to reject this section**
> You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to GE Capital Retail Bank, P.O. Box 965034, Orlando, FL 32896-5034. This is the only way you can reject this section.

(*Id.*)  Plaintiff did not send GECRB a notice under this provision.  (Ex. A at ¶ 14.)

**• What claims are subject to arbitration**

1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or participating professionals that accept the card or program sponsors if it relates to your account, except as noted below.

2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

3. Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

**• No Class Actions**

**YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT A ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.** If a court determines that this paragraph is not fully enforceable, only this sentence will remain in force and the remainder will be null and void, and the court's determination shall be subject to appeal. This paragraph does not apply to any lawsuit or administrative proceeding filed against us by a state or federal government agency even when such agency is seeking relief on behalf of a class of borrowers, including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

**• How to start an arbitration, and the arbitration process**

1. The party who wants to arbitrate must notify the other party in writing. This notice can be given after the beginning of a lawsuit or in papers filed in the lawsuit. Otherwise, your notice must be sent to GE Capital Retail Bank, Legal Operation, P.O. Box 29110, Shawnee Mission, KS 66201, ATTN: ARBITRATION DEMAND. The party seeking arbitration must select an arbitration administrator, which can be either the American Arbitration Association (AAA), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org, (800) 778-7879, or JAMS, 620 Eighth Avenue, 34th Floor, New

York, NY 10018, www.jamsadr.com, (800) 352-5267. If neither administrator is able or willing to handle the dispute, then the court will appoint an arbitrator.

2. If a party files a lawsuit in court asserting claim(s) that are subject to arbitration and the other party files a motion with the court to compel arbitration, which is granted, it will be the responsibility of the party asserting the claim(s) to commence the arbitration proceeding.

3. The arbitration administrator will appoint the arbitrator and will tell the parties what to do next. The arbitrator must be a lawyer with at least ten years of legal experience. Once appointed, the arbitrator must apply the same law and legal principles, consistent with the FAA, that would apply in court, but may use different procedural rules. If the administrator's rules conflict with this Agreement, this Agreement will control.

4. The arbitration will take place by phone or at a reasonably convenient location. If you ask us to, we will pay all the fees the administrator or arbitrator charges, as long as we believe you are acting in good faith. We will always pay arbitration costs, as well as your legal fees and costs, to the extent you prevail on claims you assert against us in an arbitration proceeding which you have commenced.

**• Governing Law for Arbitration**
This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

**• How to reject this section**
You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to GE Capital Retail Bank, P.O. Box 965034, Orlando, FL 32896-5034. This is the only way you can reject this section

(Ex. B at Section III, Resolving A Dispute With Arbitration.)

## <u>ARGUMENT</u>

Motions to compel arbitration are generally treated as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1). *Owings v. T-Mobile, USA, Inc.*, No. 12-cv-1385, 2013 U.S. Dist. LEXIS 115571, at *11-12 (M.D. Fla. June 19, 2013); *Bell v. Atl. Trucking Co., Inc.*, No. 09-cv-406, 2009 U.S. Dist. LEXIS 114342, at *5 (M.D. Fla. Dec.

7, 2009).  In deciding a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Owings*, 2013 U.S. Dist. LEXIS 115571 at *12.

Where the parties have entered into a valid and binding agreement to arbitrate, the Federal Arbitration Act ("FAA") provides that the court "shall on application of one of the parties stay the trial of the action."  9 U.S.C. § 3.  The party aggrieved by the failure or refusal of another to arbitrate may move for an order directing that such arbitration proceed in the manner provided for in the agreement to arbitrate.  9 U.S.C. § 4.

The Eleventh Circuit recognizes the strong federal policy in favor of arbitration, which requires courts to "rigorously enforce" arbitration provisions.  *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011).  The FAA requires a court to stay or dismiss a lawsuit and compel arbitration where (a) the parties have a valid arbitration agreement and (b) the claims asserted fall within the scope of the agreement.  *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).  *See also Norfolk S. Ry. Co. v. Fla. E. Coast Ry., LLC*, No. 13-cv-576, 2014 U.S. Dist. LEXIS 24737, at *26 (M.D. Fla. Feb. 26, 2014) (same); *Hardy v. PSI Family Servs., Inc*., No. 11-cv-56, 2011 U.S. Dist. LEXIS 38657, at *5-6 (M.D. Fla. Apr. 8, 2011) (same).  In determining whether a dispute is covered by an arbitration agreement, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  A dispute must be submitted to arbitration "unless it [can] be said with positive assurance that the arbitration clause [is] not susceptible of an interpretation that

cover[s] the asserted dispute[.]" *Mulhall v. Unite Here Local 355*, 618 F.3d 1279, 1292 (11th Cir. 2010).

Here, the Court should compel Plaintiff to submit her claims to arbitration on an individual basis.  GECRB and Plaintiff have a valid arbitration agreement, and Plaintiff's claims fall within the broad scope of that agreement.  Therefore, pursuant to the Agreement, Plaintiff must submit her claims to arbitration and cannot participate in a class action.

**I.      Under The Plain Language Of The Agreement And The FAA, Plaintiff's Claims Must Be Submitted To Arbitration.**

As noted above, the FAA requires a court to stay or dismiss a lawsuit and compel arbitration where (a) the parties have a valid arbitration agreement and (b) the claims asserted fall within the scope of the agreement.  *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).  In general, TCPA claims are arbitrable under the FAA.  *See, e.g., Owings v. T-Mobile, USA, Inc.*, No. 12-cv-1385, 2013 U.S. Dist. LEXIS 115571, at *20 (M.D. Fla. June 19, 2013) (referring TCPA claims to arbitration under FAA); *Betancourt v. Green Tree Servicing, LLC*, No. 13-cv-2579, 2013 U.S. Dist. LEXIS 176728, at *10-12 (M.D. Fla. Dec. 17, 2013) (same).  Thus, it comes as no surprise that plaintiffs who are parties to credit card agreements with arbitration clauses are regularly required to arbitrate their claims.  *See, e.g., Keith v. Wells Fargo Fin. Am., Inc.*, No. 10-cv-1588, 2010 U.S. Dist. LEXIS 123163, at *5, 11 (M.D. Fla. Nov. 9, 2010) (compelling parties to arbitrate dispute under credit card agreement); *Krutchik v. Chase Bank USA, N.A.*, 531 F. Supp. 2d 1359, 1366 (S.D. Fla. 2008) (same);  *Jefferson v. HSBC Bank*, No. 08-cv-121, 2008 U.S. Dist. LEXIS 48169, at *3, 8 (M.D. Ala. June 23, 2008) (same).

### A. The Parties Entered into a Valid and Enforceable Written Agreement to Arbitrate Plaintiff's Individual Claims.

Plaintiff and GECRB entered into a valid and enforceable agreement when Plaintiff accepted the terms and conditions of the Agreement.  The FAA states that "[a] written provision . . . to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Here, a contract between Plaintiff and GECRB was formed on May 12, 2012 when Plaintiff used the GECRB CareCredit website to open a CareCredit account.  (Ex. A at ¶ 8.)  Subsequently, Plaintiff made a charge on the account, received monthly billing statements and made payments for a period of time until she fell delinquent.  (*Id.* at ¶¶ 10, 22, 24.)  The Agreement covering the account states in the pertinent part that "you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or participating professionals that accept the card or program sponsors if it relates to your account."[3]  (Ex. B at Section III, Resolving A Dispute With Arbitration.)  Plaintiff did not opt out of the arbitration provision in the Agreement, and thus, it is valid and binding.  (Ex. A at ¶ 14.)

---

[3]   There are a few exceptions to the obligation to arbitrate that are not applicable here:

> We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

(*Id.*)

**B.  The Dispute Falls within the Scope of the Arbitration Clause.**

Plaintiff's claims against GECRB directly "relate[] to [her] account" and thus, fall within the arbitration clause.  The facts, not the causes of action asserted, determine whether claims fall within the scope of an arbitration provision.  *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 383 (11th Cir. 1996).  Arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Here, all of Plaintiff's claims are based upon the factual allegations that GECRB made collection calls to (352) 391-4483 in March and April 2013 without her consent.  But GECRB has shown by evidence that it made telephone calls to (352) 391-4483 in March and April 2013 regarding Plaintiff's own delinquent account.[4]  (Ex. A at ¶ 26.)  GECRB did not call (352) 391-4483 regarding Plaintiff's husband's delinquent account in March or April 2013 and in fact, had placed Plaintiff's husband's account with defendant Allied Interstate by February 23, 2013.  (*Id.* at ¶ 36.)  Further, Plaintiff consented in the Agreement to be called by GECRB and provided (352) 391-4483 to GECRB on July 7, 2012 when Plaintiff (or someone acting for Plaintiff) updated the contact information for her account through GECRB's website.  (*See id.* at ¶¶ 16-17, 20-21.)  Indeed, GECRB has produced a screen shot of electronic data showing that Plaintiff provided GECRB her cellular telephone number on that date.  (*See id.* at ¶ 21.)  Under her Agreement with GECRB, Plaintiff expressly agreed

---

[4] While GECRB admits that it made telephone calls to (352) 391-4483 in March and April 2013 regarding Plaintiff's own delinquent account, GECRB takes the position that it did not use a telephone system that constitutes an "automatic telephone dialing system" under the TCPA when making the calls.

that GECRB may "use the contact information you provide to [GECRB and] consent[ed] to [GECRB] and any other owner or servicer of your account contacting you using any communication channel" including *"text messages, automatic telephone dialing systems and/or an artificial or prerecorded voice."* (Ex. B at Section III, Information About You (emphasis added).)  In a single sentence in the Amended Complaint, Plaintiff disputes these facts and claims that she "never provided her cell phone number to GECRB or granted consent to GECRB to call her number." (Am. Compl. ¶ 32.)  That dispute plainly relates to her CareCredit account and is arbitrable.

Plaintiff asserts without supporting factual allegations that GECRB was calling about her husband's delinquent account in March and April 2013 and, implicitly, not her account. (Am. Compl. ¶¶ 18, 20-21.)  However, on a motion to compel it is facts and not assertions that carry the day, and the Koehler Declaration makes very clear that Plaintiff has a GECRB account that she has not paid and the collection efforts undertaken by GECRB identified in the Amended Complaint with respect to GECRB were in connection with her account.  *See Owings,* 2013 U.S. Dist. LEXIS 115571 at *12 (when deciding a motion to compel arbitration, "no presumptive truthfulness attaches to plaintiff's allegations."); (Ex. A at ¶¶ 24-26, 36).  On a motion to compel arbitration Plaintiff cannot hide behind the allegations in her Amended Complaint that conveniently omit any reference to her CareCredit account whatsoever.  This dispute plainly "relates to [Plaintiff's] account" and must be sent to arbitration.[5]

---

[5]   Now that Plaintiff has placed her account at issue, any claims regarding calls to the phone number of record for that account should be sent to arbitration, including any calls that Plaintiff asserts were made regarding her husband's account (although none are currently

### C.  GECRB Did Not Waive Its Right to Arbitrate.

In opposition to GECRB's motion, Plaintiff may argue that GECRB has waived its right to arbitration and that by failing to provide any allegations of fact in her original Complaint, Plaintiff was able to vitiate GECRB's right to arbitration.  That position is without merit.

When deciding whether a party waived its right to arbitrate, "[a]ny doubts concerning whether a waiver of the right to arbitrate has occurred should be resolved in favor of arbitration." *Pershing LLC v. Curi,* No. 12-cv-62449, 2013 U.S. Dist. LEXIS 28875, at *6 (S.D. Fla. Mar. 1, 2013).  Because federal law favors arbitration, "any party arguing waiver of arbitration bears a heavy burden of proof." *Home Quality Mgmt., Inc. v. Ace Am. Ins. Co.*, 381 F. Supp. 2d 1363, 1367 (S.D. Fla. 2005).  A party only waives its right to arbitrate if: (1) under the totality of the circumstances, it acted inconsistently with its arbitration right by substantially participating in the litigation and (2) by doing so, it prejudices the opposing party.  *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002).  A court will evaluate prejudice by considering the length of delay in demanding arbitration and whether the opposing party incurred significant litigation expenses, especially pretrial discovery expenses.  *Citibank, N.A. v. Stok & Assocs., P.A.*, 387 Fed. App'x 921, 924 (11th Cir. 2010).

For example, the Eleventh Circuit Court of Appeals has held that a defendant did not waive its right to arbitrate when it filed a motion to compel arbitration just ten weeks after its

---

pleaded).  Taking the position that some calls to the number she provided to GECRB in connection with her account are different from others raises issues of the scope of the contractual consent she granted to GECRB, plainly invokes the agreement and is subject to arbitration as a dispute related to her account.

right to arbitration accrued and no discovery took place during that period.  *See Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986).  Similarly in *Citibank*, the Eleventh Circuit held the plaintiff was not prejudiced after the defendant waited twenty-four days to demand arbitration and the plaintiff had only made four filings during the interim period—an offer of judgment, a reply to defendant's answer, a set of discovery requests and a notice of readiness for trial.  *See Citibank, N.A.*, 387 Fed. App'x at 925  In addition, the Eleventh Circuit requires significant pretrial discovery and litigation to take place before finding prejudice, such as taking depositions and exchanging multiple sets of interrogatories and discovery requests.  *See, e.g., Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir.1990) (finding prejudice after defendant had twice deposed the plaintiff; it had responded to the plaintiff's request for production; the plaintiff had submitted interrogatories and additional requests for production; and the trial court had scheduled a discovery completion date, a conference date, and potential trial dates); *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir.1990) (finding prejudice, in part, after party demanding arbitration took five depositions of opposing party's employees and the opposing party filed a motion to dismiss and motion opposing discovery).

Here, GECRB did not act inconsistently with its arbitration right.  GECRB filed its Motion to Compel Arbitration as soon as Plaintiff put her GECRB account at issue.  GECRB also expressly reserved its right to do so when it filed its Motion to Dismiss the Complaint, which was its first and only request for relief in this matter and which was immediately mooted by Plaintiff refusing to join issue.  In her original Complaint, Plaintiff, without any supporting factual allegations, alleged that "on information and belief" GECRB made calls to

her cellular telephone seeking to collect on her husband's delinquent account and did not disclose that she had a delinquent GECRB account.  (Compl. ¶ 16.)  As a result, GECRB filed its Motion to Dismiss but specifically stated in a footnote that Plaintiff did have a delinquent account with GECRB that was subject to an arbitration provision and reserved the right to compel arbitration as soon as Plaintiff put the account at issue.  (Mot. to Dismiss at 3, fn 2.)  In her Amended Complaint, Plaintiff, for the first time, put the account at issue by making factual allegations that she received collection calls from GECRB during March and April 2013—calls that GECRB has shown were made regarding Plaintiff's own delinquent account.  (*See* Am. Compl. ¶ 24, 30; Ex. A at ¶¶ 26, 36.)

Even assuming *arguendo* that GECRB acted inconsistently with its right to arbitrate, which it has not, GECRB still has not waived its right to arbitrate because Plaintiff has not been prejudiced in any way by GECRB's demand for arbitration.  First, there has not been a significant delay in GECRB's Motion to Compel Arbitration.  GECRB files this motion just three weeks after its right to arbitrate accrued at a time agreed upon by the parties, which is significantly less than the ten week delay the Eleventh Circuit found acceptable in *Benoay*. *See Benoay*, 805 F.2d at 1440.  Further, neither Plaintiff nor GECRB engaged in any pretrial discovery, and in fact, on April 9—just five days after the Amended Complaint was filed— the parties agreed to stay the proceedings and discovery until the Court ruled on this Motion to Compel Arbitration.  (*See* Mot. to Stay ¶ 8, Dkt. 34.)  The Eleventh Circuit has held that significantly more litigation activity than this was insufficient to support a finding of prejudice.  *See Citibank, N.A.*, 387 Fed. App'x at 925 (finding no prejudice when plaintiff made four filings during the twenty-four day period between defendant's right to arbitrate

accruing and defendant demanding arbitration).  Plaintiff, just like the plaintiffs in *Benoay* and *Citibank*, is not prejudiced by GECRB's demand to arbitrate.

> **D.  The Court Must Compel Plaintiff to Arbitrate Her Claims on an Individual Basis.**

As the dispute falls within the arbitration clause, arbitration must be compelled.  *Ivax Corp.*, 286 F.3d at 1323-24.  The arbitration must be held on an individual claim and not on a class basis because, in the Agreement, Plaintiff agreed "not to participate in a class . . . action against [GECRB] in court or arbitration."  (Ex. B at Section III, Resolving A Dispute With Arbitration.)   More specifically, the Agreement states: "**YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST [GECRB] IN COURT OR ARBITRATION**."  (*Id.* (emphasis in original).)  Therefore, the plain language of the class action waiver provision bars Plaintiff from participating in this class action lawsuit against GECRB.

At this point, there can be no reasonable argument that the Agreement's prohibition against participating in a class action is unenforceable.  In two recent cases the U.S. Supreme Court confirmed that a contractual waiver of the right to pursue class claims is enforceable, because under the FAA the parties may agree to limit the issues subject to arbitration and may agree to limit with whom the parties will arbitrate.  *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309-12 (2013) (holding a contractual waiver of class arbitration is enforceable under the FAA even when a plaintiff's cost of individually arbitrating exceeds the potential recovery); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-49, 1751-1753 (2011) (invalidating judicially-created California rule that class action waivers found in consumer adhesion contracts are unenforceable).  This rule reflects

the "liberal federal policy favoring arbitration" found in Section 2 of the FAA and the "fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S. Ct. at 1745 (omitting internal citations).  It also reflects the idea that courts "must rigorously enforce arbitration agreements according to their terms."  *Am. Express Co.*, 133 S. Ct. at 2309 (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).  In light of Supreme Court precedent, courts will hold that a contractual class action waiver provision is enforceable.  *See, e.g., Jones v. Sallie Mae, Inc.*, No. 13-cv-837, 2013 U.S. Dist. LEXIS 170968, at *17-18 (M.D. Fla. Sept. 20, 2013) (concluding that the FAA preempts a finding that a class action waiver is inherently unconscionable).  In sum, a waiver of the right to pursue class claims in arbitration or in court is enforceable.[6]

Therefore, the Court should enforce the Agreement's class action waiver provision, compel Plaintiff to arbitrate her claims individually and dismiss this action.  As Plaintiff is contractually barred from being a class representative, if the Court chooses to stay the case instead of dismissing it, the Court should still dismiss at least the class allegations.

## CONCLUSION

WHEREFORE, GECRB respectfully requests that this Court (a) compel Plaintiff to submit her claims to arbitration to be heard on an individual basis and (b) dismiss the Complaint in this matter or stay the matter while dismissing the class allegations in light of Plaintiff's contractual agreement to not participate in a class action.

---

[6] The Agreement is governed by Utah law to the extent state law applies.  (*See* Ex. B at Section III, Important Information About This Agreement.)  Utah law expressly authorizes class action waivers in connection with credit agreements.  *See* Utah Code § 70C-4-105.

## REQUEST FOR ORAL ARGUMENT

Defendant GECRB submits that for good cause that oral argument will assist the

court in deciding this motion and requests fifteen (15) minutes per side.

Dated: April 25, 2014

Respectfully submitted,

   /s/ James F. Moseley   

James F. Moseley, Esq.
Florida Bar No.:  056942
Email:  jfmoseley@mppkj.com
Stanley M. Weston, Esq.
Florida Bar No.:  0559814
Email:  smweston@mppkj.com
MOSELEY, PRICHARD, PARRISH,
KNIGHT & JONES
501 West Bay Street
Jacksonville, FL 32202
Telephone:  (904) 356-1306
Facsimile:  (904) 354-0194

Joseph L. Noga (*pro hac vice*)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Email:  jnoga@jenner.com

*Attorneys for Defendant, GE Capital
Retail Bank*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed with

the Court by using the CM/ECF system and a copy has been furnished to the below counsel

of record by email on this 25 day of April, 2014.

**Attorneys for Plaintiffs**
Robert W. Murphy, rphyu@aol.com
Julie A. Petrick, julie@michiganconsumerlaw.com

**Attorneys for Allied Interstate, LLC.**
Dora F. Kaufman    dfk@lgplaw.com, cmr@lgplaw.com, ras@lgplaw.com
J. Randolph Liebler    jrl@lgplaw.com, ydo@lgplaw.com
Lisa B. Kim    lkim@reedsmith.com, yrodriguez@reedsmith.com
Felicia Y. Yu    fyu@reedsmith.com, cspoon@reedsmith.com
Abraham Colman acolman@reedsmith.com


*/s/James F. Moseley*
Attorney for Defendant, GE Capital Retail Bank